COMMONWEALTH of Pennsylvania,
Appellee

v.

Harold Winston NOEL, Jr., Appellant.

Superior Court of Pennsylvania.

Argued March 13, 2012.

Filed Sept. 11, 2012.

J. Michael Farrell, Philadelphia, for appellant.

Priya M. Travassos, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: GANTMAN, SHOGAN and WECHT, JJ.

OPINION BY SHOGAN, J.

Appellant, Harold Winston Noel, Jr., appeals from the judgment of sentence entered on April 16, 2010, in the Philadelphia County Court of Common Pleas. On appeal, Appellant challenges, *inter alia*, the trial court's application of Pa.R.Crim.P. 631(E)(2) in that he was required to exercise peremptory challenges before the exercise of all his challenges for cause. For the reasons set forth below, we affirm.

The relevant facts of this matter may be briefly summarized as follows. At a jury trial held on February 16, 2010 through February 18, 2010, Mr. Zachary Willis ("Willis") testified as a witness for the Commonwealth. Willis stated that on June 29, 2008, while walking to a gas station at Aramingo Avenue and Somerset Street in Philadelphia, a man later identified as Appellant approached him. N.T., Trial, 2/16/10, at 17. Appellant said "Yo, let me get your wallet." *Id.* Willis thought it was a joke at first, but he realized that it was not when he saw Appellant was pointing a gun at him. *Id.* at 18. Willis gave his wallet to Appellant, and Appellant fled towards Somerset and Memphis Streets. *Id.* Willis subsequently identified Appellant in a line-up as the man who robbed him. *Id.* at 66.

Next, Mr. Eugene McPeak ("McPeak") testified and stated that on June 29, 2008, as he was placing his groceries into his vehicle, a man approached him and demanded the cash McPeak had in his hand. N.T., Trial, 2/17/10, at 22. The man then lifted his shirt and removed a gun. *Id.* at 23. With the gun drawn, the man pushed McPeak down and ran north towards Aramingo Avenue. *Id.* at 23. McPeak, however, was unable to identify the person who attempted to rob him. *Id.* at 29.

Next, a co-conspirator, Steven Reiner ("Reiner"), who is also known as Michael Reiter, testified for the Commonwealth. He testified that he was involved in the robberies involving Willis and McPeak, and that he pled guilty to these crimes and was currently incarcerated. N.T., Trial, 2/17/10, at 89. He testified that he and Appellant conspired to engage in these robberies in an effort to obtain cash so that they could buy drugs. *Id.* at 70–74. Reiner corroborated the testimony of Willis and McPeak. *Id.*

At the conclusion of the trial, on February 19, 2010, the jury returned a verdict of guilty as to criminal conspiracy to commit robbery, possession of an instrument of crime, and possession of a firearm with the manufacturer number altered with respect to McPeak. The jury further found Appellant guilty of robbery, criminal conspiracy to commit robbery, firearms not to be carried without a license, possession of an instrument of crime, possession of a firearm by a prohibited person, and possession of a firearm with the manufacturer number altered with respect to Willis.

On April 16, 2010, the trial court sentenced Appellant to an aggregate term of 29 to 58 years of incarceration. Appellant timely appealed.

On appeal, Appellant raises two issues for this Court's consideration:

Did not the trial court violate Pa. R.Crim. P. 631(E)(2) by requiring the defense and prosecution to exercise peremptory challenges before the exercise of all challenges for cause?

Whether Appellant was deprived of his right to a fair trial under the United States and Pennsylvania Constitutions by the prosecutor's accusation in closing argument that defense counsel "insulted" and "excoriated" complainant Zachary Willis and "dragged (him) through

the mud, in court", and by implicitly injecting a claim of entitlement to special consideration for the complainant by expressing personal outrage at alleged mistreatment of "victims in my prosecutions, victims in my cases"?

Appellant's Brief at 2. We will address these issues in the order in which they were presented.

■ In his first issue, Appellant claims the trial court violated Pa.R.Crim.P. 631 and erred in requiring the parties to exercise peremptory challenges before the exercise of challenges for cause. Because this argument requires us to interpret a procedural rule, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Dowling*, 598 Pa. 611, 616, 959 A.2d 910, 913 (2008). The rule at issue is set forth below:

**Examination and Challenges of Trial Jurors**

(A) *Voir dire* of prospective trial jurors and prospective alternate jurors shall be conducted, and the jurors shall be selected, in the presence of a judge, unless the judge's presence is waived by the attorney for the Commonwealth, the defense attorney, and the defendant, with the judge's consent.

(B) This oath shall be administered individually or collectively to the prospective jurors:

"You do solemnly swear by Almighty God (or do declare and affirm) that you will answer truthfully all questions that may be put to you concerning your qualifications for service as a juror."

(C) *Voir dire*, including the judge's ruling on all proposed questions, shall be recorded in full unless the recording is waived. The record will be transcribed only upon written request of either party or order of the judge.

(D) Prior to *voir dire*, each prospective juror shall complete the standard, confidential juror information questionnaire as provided in Rule 632. The judge may require the parties to submit in writing a list of proposed questions to be asked of the jurors regarding their qualifications. The judge may permit the defense and the prosecution to conduct the examination of prospective jurors or the judge may conduct the examination. In the latter event, the judge shall permit the defense and the prosecution to supplement the examination by such further inquiry as the judge deems proper.

(E) In capital cases, the individual *voir dire* method must be used, unless the defendant waives that alternative. In non-capital cases, the trial judge shall select one of the following alternative methods of *voir dire*, which shall apply to the selection of both jurors and alternates:

(1) Individual *Voir Dire* and Challenge System

(a) *Voir dire* of prospective jurors shall be conducted individually and may be conducted beyond the hearing and presence of other jurors.

(b) Challenges, both peremptory and for cause, shall be exercised alternately, beginning with the attorney for the Commonwealth, until all jurors are chosen. Challenges shall be exercised immediately after the prospective juror is examined. Once accepted by all parties, a prospective juror shall not be removed by peremptory challenge. Without declaring a mistrial, a judge may allow a challenge for cause at any time before the jury begins to deliberate, provided sufficient alternates have been selected, or the defendant consents to be tried by a jury

of fewer than 12, pursuant to Rule 641.

(2) List System of Challenges

(a) A list of prospective jurors shall be prepared. The list shall contain a sufficient number of prospective jurors to total at least 12, plus the number of alternates to be selected, plus the total number of peremptory challenges (including alternates).

(b) Prospective jurors may be examined collectively or individually regarding their qualifications. If the jurors are examined individually, the examination may be conducted beyond the hearing and presence of other jurors.

(c) Challenges for cause shall be exercised orally as soon as the cause is determined.

(d) When a challenge for cause has been sustained, which brings the total number on the list below the number of 12 plus alternates, plus peremptory challenges (including alternates), additional prospective jurors shall be added to the list.

(e) Each prospective juror subsequently added to the list may be examined as set forth in paragraph (E)(2)(b).

(f) When the examination has been completed and all challenges for cause have been exercised, peremptory challenges shall then be exercised by passing the list between prosecution and defense, with the prosecution first striking the name of a prospective juror, followed by the defense, and alternating thereafter until all peremptory challenges have been exhausted. If either party fails to exhaust all peremptory challenges, the jurors last listed shall be stricken. The remaining jurors and alternates shall be seated. No one shall disclose which party peremptorily struck any juror.

Comment: This rule applies to all cases, regardless of potential sentence. Formerly there were separate rules for capital and non-capital cases.

If Alternative (E)(1) is used, examination continues until all peremptory challenges are exhausted or until 12 jurors and 2 alternates are accepted. Challenges must be exercised immediately after the prospective juror is questioned. In capital cases, only Alternative (E)(1) may be used unless affirmatively waived by all defendants and the Commonwealth, with the approval of the trial judge.

If Alternative (E)(2) is used, sufficient jurors are assembled to total 12, plus the number of alternates, plus at least the permitted number of peremptory challenges (including alternates). It may be advisable to assemble additional jurors to encompass challenges for cause. Prospective jurors may be questioned individually, out of the presence of other prospective jurors, as in Alternative (E)(1); or prospective jurors may be questioned in the presence of each other. Jurors may be challenged only for cause, as the cause arises. If the challenges for cause reduce the number of prospective jurors below 12, plus alternates, plus peremptory challenges (including alternates), new prospective jurors are called and they are similarly examined. When the examination is completed, the list is reduced, leaving only 12 jurors to be selected, plus the number of peremptories to be exercised; and sufficient additional names to total the number of alternates, plus the peremptories to be exercised in selecting alternates. The parties then exercise the peremptory challenges by passing

the list back and forth and by striking names from the list alternately, beginning with counsel for the prosecution. Under this system, all peremptory challenges must be utilized. Alternates are selected from the remaining names in the same manner. Jurors are not advised by whom each peremptory challenge was exercised. Also, under Alternative (E)(2), prospective jurors will not know whether they have been chosen until the challenging process is complete and the roll is called. . . .

Pa.R.Crim.P. 631 (and selected comments).

Jury selection in this case spanned two days, February 8 and 9, 2010. At the outset, the trial court made clear that it intended to proceed pursuant to the "list method" of jury selection (N.T., 2/8/2010, at 19; Trial Court Opinion, 5/9/11, at 12), which, as noted above, is prescribed by Rule 631(E)(2). The record reveals confusion among the court and the parties regarding the gravamen of that rule generally, and its application in this case specifically. Appellant's counsel repeatedly requested that the parties not be asked to exercise peremptory strikes until the jury pool had been reduced to the Rule 631–specified number of **eligible** jurors. The designation of eligible jurors was to be: 12 jurors; plus 2 alternates; plus 14 additional jurors resulting in a total of 28 eligible jurors, and it ensured a jury of fourteen (12 jurors and 2 alternates), would remain following the exercise by the parties of their fourteen combined peremptory strikes).[1] N.T., 2/8/2010, at 17.

In response to various concerns, the trial court ensured that the entire rule, as well as the commentary, was read into the record. N.T., 2/8/2010, at 21–27. The trial court disagreed with the view that Rule 631(E)(2) required the exercise of both parties' peremptory challenges in their entirety only upon the assembling of an eligible venire of twenty-eight jurors. N.T., 2/8/10, at 26–29. Specifically, with regard to Rule 631(E)(2)(d) ("When a challenge for cause has been sustained, which brings the total number on the list below the number of twelve plus alternates, plus peremptory challenges (including alternates), additional prospective jurors shall be added to the list."), the court explained its view at the end of the first day of jury selection as follows:

> [The rule says:] When a challenge for cause has been sustained, which brings the total number on the list below the number of 12 plus alternates, plus peremptory challenges (including alternates), additional prospective jurors shall be added to the list. **It doesn't tell you when.**
>
> **It just says it shall be added.** So, I'm adding them tomorrow. I'm going to add the additional jurors tomorrow, because the list now only has 24 total, which is six short, of the 30 that we need [sic].
>
> So I'm going to add them tomorrow.

N.T., 2/8/2010, at 29 (emphasis added).[2]

In the meantime, however, all for-cause challenges having been addressed and the

---

1. During *voir dire,* the parties and the trial court repeatedly misstated the number of jurors required to satisfy Rule 631(E)(2), most frequently citing a putative requirement of thirty eligible jurors. Inasmuch as the record repeatedly refers to a jury of twelve with two alternates, and the rules dictate that each party have seven peremptory strikes, we believe the correct number to be twenty-eight, and analyze the case on that basis. The precise number has no direct bearing on the broader principle at issue, inasmuch as the venire at the end of the first day of jury selection undisputedly was smaller than required by Rule 631(E)(2).

2. Despite the trial court's reference to twenty-four remaining jurors, it appears undisputed that the pool at that juncture, in fact, consist-

original pool of forty-two prospective jurors having been reduced to only twenty-three eligible jurors, the court directed the parties to "pass the list" and exercise their peremptory challenges at the end of the first day of jury selection. N.T., 2/8/2010, at 32.

The transcript lacks any detail regarding the process by which peremptory strikes were exercised following the above discussions, and the trial court provides no further detail in its opinion. Accordingly, we review the record, the trial court opinion, and the briefs of the parties to glean the effects of the trial court's ruling. The Commonwealth asserts, and Appellant does not dispute, that all but one of the combined fourteen peremptory strikes were exercised on the evening of February 8, 2010. Appellant used all seven of his peremptory challenges that evening, while the Commonwealth exercised six, retaining one that it used to strike a juror on February 9, 2010, which was day two of jury selection. Brief for Commonwealth at 6–7. That is, on the evening of February 8, the parties began "passing the list" with a venire of only twenty-three, and, after the collective exercise of thirteen peremptory strikes, ended the evening with ten accepted and eligible jurors and four seats remaining to be filled. *Id.*

Notably, the trial court at least implied that the parties had the prerogative not to exercise all of their respective peremptory strikes, an inference borne out by the fact that the Commonwealth appears to have retained one peremptory challenge that it exercised on February 9. N.T., 2/8/2010, at 30 ("The prosecution goes first, they exercise—they either accept or strike the first one, and then the next one, all and then alternating thereafter, until all preemptory

[*sic*] challenges have been exhausted. **And obviously they won't be exhausted until tomorrow because we're going to add the additional … prospective jurors tomorrow.**" (emphasis added)). However, on the evening of February 8, 2010, the court evidently presented the parties with their only opportunity to exercise peremptory strikes against the twenty-three eligible jurors who comprised the remainder of that day's jury pool—a premise the Commonwealth does not dispute, and which is consistent with the trial court's discussion of the issue.

With this background established, we address the jury selection issue raised by Appellant. Resolving the issue requires us first to determine whether the trial court erred as a matter of law in its application of the "list method" described by Rule 631(E)(2). If we determine that the court erred, we then must address the question of whether Appellant must show actual prejudice to obtain relief, and, if so, whether Appellant sustained such prejudice in this case.

We find no difficulty disposing of the first question. In this regard, Appellant argues that the plain language of Rule 631(E)(2) requires that peremptory strikes be reserved until the court has assembled a panel of **eligible** prospective jurors equal to the number of jurors to serve as such (here, twelve), the alternates to serve (here, two), and the total number of peremptory strikes collectively afforded the parties (here, fourteen).

In addition to the plain language of Rule 631(E)(2), Appellant calls our attention to this Court's comments on the implementation of that rule in *Commonwealth v.*

ed of twenty-three venirepersons. *See* Brief for Commonwealth at 6 n. 5 (citing N.T., 2/8/2010, at 133–43 in support of the fact that

of the originally denominated forty-two jurors, there were, in fact, forty-one because juror number twenty-seven was missing).

*Clark,* 802 A.2d 658 (Pa.Super.2002), where we noted as follows:

> Appellant also asserts that the court erred in allowing the jury to be selected in violation of Pa.R.Crim.P. 631(E)(2) in that his attorney was forced to exercise peremptory challenges prior to exercising all "for cause" challenges. In the present case, a pool of jurors was first selected and subjected to a group *voir dire.* They had also filled out the jury questionnaires, as required by the rule. After the group examination, the jurors were individually called up to the counsel table and subjected to individual questioning. After the individual questioning, counsel were required to express a challenge for cause if they believed one existed. Barring the striking of a juror for cause, counsel were then required to either exercise a peremptory challenge or "accept" the juror. Once accepted, the juror could not be later stricken with a peremptory challenge. In this respect, the system employed was a combination or hybrid of the "individual *voir dire* and challenge system" and the "list system of challenges." See Pa.R.Crim.P. 631(E)(1) & (2) [respectively].

> It is clear that the system of jury selection employed in the present case violates the strict wording of Pa. R.Crim.P. 631. As a review of that rule bears out, if the "list system" of challenges is employed, then peremptory challenges are not to be exercised until after all challenges for cause have been exercised. The primary characteristic of this approach is that each attorney has the opportunity to exercise his peremptory challenges on a priority basis after all prospective jurors have been examined. So employed, each attorney may strike off the jurors he or she least prefers to hear the case.

> Given our disposition of the other issues, it is unnecessary for us to reach this issue and we express no opinion on whether the violation that occurred would have warranted the granting of a new trial. Nevertheless, the Rules of Criminal procedure are not merely advisory. They were drafted with the intention that they would be faithfully applied. We see no reason that Pa. R.Crim.P. 631 should be ignored upon retrial.

*Id.* at 663 n. 3.

The Commonwealth does not materially dispute—although it does not concede—that the trial court's reading and consequent application of Rule 631(E)(2) was in error. The Commonwealth proceeds instead to the question of entitlement to relief arising from any such violation. However, regarding the Rule itself, the Commonwealth observes correctly that the *Clark* footnote was *dictum,* and hence does not bind this Court as a matter of *stare decisis.* See Brief for Commonwealth at 8 n. 8. Nevertheless, we agree with the *dictum* in *Clark* to the extent that the method of *voir dire* in the instant case was flawed.

▮ When we interpret our Rules of Criminal Procedure, we employ the same principles employed in the interpretation of statutes. Pa.R.Crim.P. 101(C); *Commonwealth v. Cooper,* 611 Pa. 437, 27 A.3d 994, 1003 (2011). The object of interpretation of the criminal rules "is to ascertain and effectuate the intention" of our Supreme Court, as the rule-issuing body. "Every [rule] shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). "When the words of a [rule] are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Because the words of Rule 631(E)(2) are "clear and free from

all ambiguity," we need not delve further into the applicable rules of construction.[3]

The trial court's suggestion that the list method does not prescribe **when** the jury pool must be replenished, or **when** the parties must exercise their peremptory challenges, reflects an erroneous reading of Rule 631. To the contrary, the rule provides in relevant part, "**When a challenge for cause has been sustained, which brings the number [of jurors] below the [number prescribed], additional prospective jurors shall be added to the list.**" Pa.R.Crim.P. 631(E)(2)(d) (emphasis added). Eliminating any doubt about the meaning of that provision, the comment adds that, immediately following the assembly of a jury pool sufficiently large to satisfy the Rule 631(E)(2)(d) requirement:

> Jurors may be challenged **only for cause.** If the challenges for cause reduce the number of jurors [below the number prescribed], new prospective jurors are called and they are similarly examined. When the examination is completed, the number is reduced, leaving only 12 jurors to be selected, plus the number of peremptories to be exercised; and sufficient additional names to total the number of alternates. . . . The parties **then** exercise the peremptory challenges by passing the list back and forth and by striking names from the list alternately. . . . Under this system, all peremptory challenges must be utilized.

Pa.R.Crim.P. 631 comment (emphasis added).

■ As we suggested in *Clark*, the list system of *voir dire* specified in Rule 631(E)(2) requires by its terms that the exercise of peremptory challenges occur only after *voir dire* and challenges for cause, together, have been completed.

Thereafter, the pool may be reduced to the precise sum of the number of jurors and alternates to be empaneled, plus the number of peremptories provided to each party, by removing the necessary number of jurors from the remaining list (here, twenty-eight), whereupon the list then may be passed for the exercise by the parties of all of their peremptory challenges. Alternatively, peremptory strikes may be exercised when a pool remains that consists solely of eligible, qualified jurors (*i.e.,* those as to whom no for-cause challenge will lie) **exceeding** the minimum number required by Rule 631(E)(2)(d). When the parties either have exhausted their peremptory challenges entirely, or have exercised as many as they wish to use, the remaining list then may be reduced by striking the appropriate number of prospective jurors from the bottom of the list to reduce the total to the designated number of jurors plus alternates required for trial (here, fourteen). The language of the rule is sufficiently plain on this point, and the comment erases any lingering doubt.

■ We are, thus, constrained to conclude that the trial court did not conduct jury selection in conformity with the requirements of the list system of *voir dire.* Instead of assembling venirepersons and performing *voir dire* on as many of them as necessary to create a panel of twenty-eight eligible jurors prior to the commencement of peremptory strikes, the exercise of which then would have reduced the pool of twenty-eight to the fourteen jurors required for trial, the court required the parties to exercise their peremptory challenges within the context of a then-incomplete jury pool. In so doing,

---

**3.** We reiterate that, because this issue requires us to interpret a procedural rule, our standard of review is *de novo* and our scope of review is plenary. *Dowling,* 598 Pa. at 616, 959 A.2d at 913.

the court violated the plain language of the rule and erred as a matter of law.

Having determined that the trial court erred in its implementation of the list system of *voir dire*, we must now consider whether Appellant is required to demonstrate prejudice to obtain relief, or whether the trial court's error created *per se* prejudice.

■ As noted above, the method of *voir dire* used here required the parties to use peremptory challenges before all *venire* persons were known. Because such a method is available in non-capital cases and mandated in capital cases (Pa.R.Crim. 631(E)(1)), we cannot conclude that it is prejudicial *per se*. Because the Pennsylvania Supreme Court is the rule-making authority for the courts of this Commonwealth, it is doubtful it created a rule that is prejudicial *per se*. To conclude otherwise would render suspect every verdict in this Commonwealth where the list method has been employed. Because we have concluded that the process followed in the instant case was not *per se* prejudicial, we must now determine whether Appellant suffered actual prejudice as a result of the *voir dire* that occurred here.

■ Upon review, while we conclude that the trial court erred in its administration of jury selection, we further conclude that Appellant has failed to establish actual prejudice. As the Commonwealth notes, in the case at bar, Appellant does not argue that the jury, as seated, was unfair or unqualified, nor does he argue actual prejudice. Commonwealth's Brief at 24 n. 9. It is this absence of actual prejudice that distinguishes this case from instances where a new trial was granted.

■ In *Commonwealth v. Johnson*, 299 Pa.Super. 172, 445 A.2d. 509 (1982), the trial court erred in failing to excuse for cause a prospective juror whose impartiality was, for several reasons, subject to doubt. *Johnson*, 445 A.2d at 511–14. The defense was forced to use one of its peremptory challenges to rectify the trial court's error. *Id.* at 514. This Court concluded that this was not harmless error.[4] *Id.*

Likewise, in *Commonwealth v. Jones*, 477 Pa. 164, 383 A.2d 874 (1978) (plurality) and *Commonwealth v. McBee*, 267 Pa.Super. 49, 405 A.2d 1297 (1979), cases upon which the *Johnson* Court relied, there was similar actual prejudice where the defendant was forced to use a peremptory challenge to strike a potential juror who should have been removed for cause. *Jones*, 383 A.2d at 877; *McBee*, 405 A.2d at 1300.

The error in the case at bar is readily distinguishable from *Johnson, Jones,* and *McBee.* In those cases, there was a forced selection of a juror and a forced use of a peremptory challenge and such coercion was held not to be harmless error. Here, while Appellant was compelled to use peremptory strikes prematurely, there is absolutely no evidence and no argument that Appellant was forced to select a juror whom he would have stricken. Therefore, we do not find, and Appellant does not cite, any actual prejudice. Accordingly, we conclude that any error stemming from *voir dire* was harmless, and Appellant is entitled to no relief on this claim.

Next, Appellant argues that he was denied a fair trial because of comments made during the Commonwealth's closing that

---

4. "[H]armless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." *Commonwealth v. Allshouse*, —— Pa. ——, ——, 36 A.3d 163, 182 (2012) (citation and quotation marks omitted).

Appellant claims amounted to prosecutorial misconduct. We disagree.

■ It is well settled that a prosecutor has considerable latitude during closing arguments and his or her statements are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa.Super.2008) (citation omitted). "Further, prosecutorial misconduct does not take place unless the 'unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict.' " *Id.* (quoting *Commonwealth v. Paddy*, 569 Pa. 47, 82–83, 800 A.2d 294, 316 (2002)). Moreover, a prosecutor can fairly respond to attacks on a witness's credibility. *Id.* (citation omitted). In reviewing a claim of improper prosecutorial comments, our standard of review is whether the trial court abused its discretion. *Commonwealth v. Hall*, 549 Pa. 269, 285, 701 A.2d 190, 198 (1997) (citation omitted). When considering such a claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one, because not every inappropriate remark by a prosecutor constitutes reversible error. *Commonwealth v. Lewis*, 39 A.3d 341, 352 (Pa.Super.2012) (citation and quotation marks omitted). "A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context." *Id.* (citation omitted).

■ Here, Appellant argues as follows: As noted in the Statement of Facts, *supra,* in the course of closing argument the prosecutor made the following statement in reference to defense counsel's cross examination of complainant Zachary Willis

Zachary—I'm starting to shout, I'm sorry Zachary—I can't help my self, [sic] and I can't help myself sometimes, because when victims in my prosecutions, victims in my cases, get insulted and excoriated, and dragged through the mud, in court, gets my blood red hot.

Appellant's Brief at 17 (citing N.T., 2/18/10, 129). Appellant argues that this statement was prejudicial and entitled him to a new trial. *Id.* at 20.

The trial court addressed this issue as follows:

The Court did not err in finding that no prosecutorial misconduct existed when the Commonwealth stated that when victims get "insulted and excoriated, and dragged through the mud, in Court" it caused his blood to get red hot.

[ABA Standard for Criminal Justice Rule] 3–5.8 states that it is misconduct for "the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." Additionally, "it is well settled that the prosecutor may fairly respond to points made in the defense closing." [*Commonwealth v.*] *Chmiel* [585 Pa. 547, 618–619, 889 A.2d 501, 543 (2005) ].

Defense incorrectly asserts that the Commonwealth stated "I take it personally." What the Commonwealth did say was:

Zachary—I'm starting to shout, I'm sorry, Zachary—I can't help myself, and I can't help myself sometimes, because when victims in my prosecution, victims in my cases, get insulted and excoriated, and dragged through the mud, in Court, gets my blood red hot.

*Id.* at 129. The Commonwealth never once expressed his personal belief as to the truth or falsity of any testimony, or

the evidence, or the guilt of Defendant. Instead, he addressed the manner in which defense counsel berated and belittled Willis. He addressed the manner in which cross-examination was conducted. He addressed the manner in which defense all but stated that Willis lied about being robbed because of the fact that he knew Stayton and had one sexual encounter with her. He addressed, not the content of Willis' testimony, but the manner in which defense counsel conducted *himself.* This Court did not conflate the two issues of the treatment of Willis and the testimony of Willis. This Court found that they were two separate issues, and in no way would the mention of the treatment of the victim by defense cause "the unavoidable effect of [prejudicing] the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." [*Commonwealth v.*] *Judy* [978 A.2d 1015, 1020 (Pa.Super.2009) ].

Trial Court Opinion, 5/9/11, at 22–23 (emphasis in original).

We agree with the trial court. As noted above, a prosecutor's comments are not reviewed in a vacuum. *Lewis,* 39 A.3d at 352. The emphasis of the prosecutor's remarks was on the fact that defense counsel had so aggressively assailed the victim and repeatedly said the victim, Zachary Willis, was never robbed, and was therefore, a liar. N.T., 2/18/10, at 95, 96, 98, 99, 102, 105–106, 113, and 121. The prosecutor never attempted to bolster the victim's testimony or vouch for his credibility. Rather, the prosecutor reacted and fairly responded to defense counsel's repeated attacks. Upon review, we conclude that nothing in the prosecutor's closing created the unavoidable effect of prejudicing the jurors by forming in their minds a fixed bias and hostility toward Appellant, de-

priving him of a fair trial. *Holley,* 945 A.2d at 250. Therefore, we discern no abuse of discretion.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

WECHT, J., files a Dissenting Opinion.

DISSENTING OPINION by WECHT, J.

In this case, we are called upon to address a trial court's misapplication of the Pennsylvania Rules of Criminal Procedure governing jury selection. Specifically, we must decide whether a ruling that impairs the exercise of the peremptory challenges to which a criminal defendant is entitled by law constitutes reversible error. I would hold, under the circumstances presented, that it does. Accordingly, I would vacate Appellant Harold Noel's judgment of sentence and remand for a new trial. Because my analysis would dictate a contrary result to that reached by the majority, I respectfully dissent.

At the outset, I note my agreement with the majority's determination that the trial court's application in this case of the "list system" of jury selection specified in Pa. R.Crim.P. 631(E)(2) constituted legal error, Maj. Op. at 850–57, and I join in the majority's interpretation of Rule 631(E)(2). Specifically, I agree that trial courts must apply the rule consistently with its plain language, as elucidated by the majority.

My disagreement with the majority lies in its determination that no prejudice arose as a result of the trial court's legal error. As set forth below, criminal defendants as a matter of law are entitled to faithful application of the rules of procedure governing jury selection. To be

clear, I would not hold that all deviations from those rules constitute reversible error *per se*. However, I do believe prejudice necessarily inheres where such errors may have compelled a defendant to exhaust his peremptory challenges differently than he would have done absent the error. I believe the matter before us is just such a case.

The majority does not discuss the considerations that have animated the peremptory challenge for nearly as long as the jury trial itself has been employed in the Anglo–American judicial system. Although Appellant's analysis of federal constitutional principles is sparse, *see* Brief for Appellant at 15–17, the United States Supreme Court has, in a long line of cases, elucidated the historical origins and nature of peremptory challenges. Because this history informs my convictions regarding this matter's proper disposition, I begin by reviewing those cases.

Appellant cites *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *United States v. DeJesus*, 347 F.3d 500 (3d Cir.2003), to support his contention that the deprivation of the prescribed use of one or more peremptory challenges violates "a defendant's right to a trial before an unbiased jury." Brief for Appellant at 17. In *Batson*, the Supreme Court, relying in part on, but substantively reversing its decision in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), considered an equal protection challenge to a prosecutor's systematic use of peremptory challenges to strike jurors of a particular race. Despite the prosecution's historic prerogative to exercise peremptory strikes without judicial interference, the Court found it a "perversion" of the role of peremptory strikes, and a violation of the equal protection clause of the United States Constitution, to use peremptory strikes in a racially discriminatory fashion. *See Batson*, 476 U.S. at 92–96, 106 S.Ct. 1712.

In *Swain*, the Court surveyed the common-law origins of the peremptory challenge in the Anglo–American tradition. The Ordinance for Inquests, implemented in England in the year 1305, was construed to permit the prosecutor to direct any juror, after he was examined, to "stand aside" until the entire panel had been examined and the defendant had exercised his challenges. *See Swain*, 380 U.S. at 213, 85 S.Ct. 824. The use of peremptories in that form continued until the separation of the American colonies, and continues in modified form in England. *Id.* at 213 & n. 12, 85 S.Ct. 824. The same privilege, in different form, was enacted by the United States Congress in 1790. *Id.* at 214–15, 85 S.Ct. 824. By 1870, "most, if not all, States had enacted statutes conferring on the prosecution a substantial number of peremptory challenges, the number generally being at least half, but often equal to, the number had by the defendant." *Id.* at 216, 85 S.Ct. 824.

Following its lengthy review, the Supreme Court continued, in oft-quoted language:

> The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury. Although there is nothing in the Constitution of the United States which requires the Congress or the States to grant peremptory challenges, nonetheless the challenge is one of the most important of the rights secured to the accused. The denial or impairment of the right is reversible error without a showing of prejudice. For it is, as Blackstone says, an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its full purpose.

*Id.* at 219, 85 S.Ct. 824 (internal quotation marks, modifications, and citations omitted). Thus, the Court appeared to hold that any intrusion upon the unfettered right to exercise peremptory challenges was reversible error.

More recent cases, however, have deflated much of *Swain's* grandiloquence. In *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), the defendant was forced to expend a peremptory strike in *lieu* of a for-cause challenge that the trial court erroneously had refused to honor. The Supreme Court "reject[ed] the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury," and stated that peremptory challenges are "not of constitutional dimension." *Id.* at 88, 108 S.Ct. 2273. Rather, "[t]hey are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Id.* The Court thus rejected the defendant's claim that the impairment of his use of the peremptory challenges provided by state law constituted a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. The Court noted that "it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. As such, the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.* at 89, 108 S.Ct. 2273 (citations omitted).

The Oklahoma law that the *Ross* Court examined required a defendant to exercise a peremptory challenge to preserve a claim of trial court error with respect to a for-cause challenge. Under state law, relief on appeal would only be warranted if a) the defendant exhausted all of his remaining peremptory challenges during jury selection, and b) an incompetent jury was empaneled. *Id.* The Court held that, because the defendant could not demonstrate that an incompetent juror had been seated in his case, he had received all that state law required. *Id.* at 89–91, 108 S.Ct. 2273.

In *United States v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), the Court further circumscribed the constitutional dimension of peremptory challenges, this time under federal law. The Court, applying *Ross,* held that no federal rule violation had occurred when the defendant was forced to use a peremptory challenge against a juror who should have been dismissed for cause. Focusing on the impartiality of the jury ultimately seated, the Court held that, because the defendant had received his full allotment of peremptory challenges, no constitutional violation had occurred. *Id.* at 315–316, 120 S.Ct. 774. Had a juror been seated who should have been excused for cause, however, reversal of the conviction would have been constitutionally required. *Id.,* at 316, 120 S.Ct. 774.

In *Rivera v. Illinois,* 556 U.S. 148, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009), the Court rejected *Swain's* suggestion that *per se* prejudice resulted from any impairment of the exercise of peremptory challenges. In that case, a state trial court erroneously had rejected one of the defendant's peremptory challenges on the basis that the defendant was exercising his challenge in a biased manner made impermissible under *Batson.* The Illinois Supreme Court disagreed with defendant's argument that the deprivation of his peremptory challenge required relief, regardless of whether the defendant could show actual prejudice in the jury as composed following the trial court's error. *Rivera,* 556 U.S. at 155, 129

S.Ct. 1446. Finding no "structural error," and no showing that the error was prejudicial, the Illinois court denied relief. *Id.*

The United States Supreme Court affirmed. First, it rejected Rivera's argument that the improper seating of a jury— *e.g.*, because a defendant was denied the opportunity to strike a juror peremptorily due to an erroneous ruling—was not "amenable to harmless-error analysis because it is impossible to ascertain how a properly constituted jury . . . would have decided his case." *Id.* at 157, 129 S.Ct. 1446. Rather, "[i]f a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern. Rather, it is a matter for the State to address under its own laws." *Id.* Further, the Court expressly disapproved *Swain's* suggestion that no prejudice need be shown to require a remedy for the improper impairment of a peremptory challenge. The Court nonetheless emphasized that states "are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se.*" *Id.* at 161–62, 129 S.Ct. 1446.

Pennsylvania lacks a large body of contemporary case law examining the peremptory challenge. In particular, we have not yet confronted under Pennsylvania law the question of ·the prejudice to a party's jury selection rights in circumstances analogous to those before us. However, this Court and the Supreme Court of Pennsylvania have assessed the effect of, and remedy for, the impairment of a party's exercise of peremptory challenges. The circumstances in those cases differ from those in the matter now before us, but they provide ample guidance nonetheless.

*Commonwealth v. Johnson,* 299 Pa.Super. 172, 445 A.2d 509 (1982), is the leading Pennsylvania case in this area. In that case, as in *Ross* and *Martinez–Salazar,* the trial court erred in failing to excuse for cause a prospective juror whose impartiality was, for several reasons, subject to doubt. *Johnson,* 445 A.2d at 511–14. The defense used one of its peremptory challenges to rectify the trial court's error. *Id.* at 514. This Court did not analyze in depth the need for a new trial, nor did we engage in a harmless error analysis based upon the composition of the jury or the effect of the de facto deprivation of one of defendant's peremptory challenges. Rather, we found prejudice in the deprivation itself, not in its effect on the trial jury as seated:

> We . . . find the court's refusal to excuse Mr. Rubin for cause an abuse of discretion. This error was not harmless. Where, as here, a defendant is forced to use one of his peremptory challenges to excuse a prospective juror who should have been excused for cause, and then exhausts his peremptories before the jury is seated, a new trial will be granted.

*Id.* at 514 (citing, *inter alia, Commonwealth v. Jones,* 477 Pa. 164, 383 A.2d 874 (1978) (plurality)); *see Commonwealth v. McBee,* 267 Pa.Super. 49, 405 A.2d 1297 (1979) (same).

We ruled similarly in *Commonwealth v. Ingber,* 516 Pa. 2, 531 A.2d 1101 (1987). Once again, a criminal defendant had exercised a peremptory challenge to prevent the seating of a juror whom the trial court erroneously declined to excuse for cause. Relying upon our Supreme Court's decision in *Jones,* we emphasized that "it is error to force a defendant to use his peremptory challenges on a person who should have been excused for cause [when] that defendant exhausts those peremptory

challenges prior to the seating of the jury." *Ingber*, 531 A.2d at 1104 (quoting *Jones*, 383 A.2d at 876; internal quotation marks and modifications omitted). "Wrongful deprivation of one or more of the number of peremptory challenges provided for by statute or rule of course is clearly an impairment of the defendant's exercise of his right to peremptory challenges." *Id.* at 1105. Because the appellant in *Ingber* had been forced to exercise a peremptory challenge to strike a juror who should have been excused by the court for cause, the appellant was entitled to a new trial. *Id.*

In *Jones*, upon which rest *Johnson* and *McBee*, our Supreme Court found prejudicial error requiring a new trial when the defendant was forced to use a peremptory challenge to cure a trial court's erroneous refusal to excuse a juror for cause and thereafter exhausted his remaining peremptory challenges before the jury was empaneled. The *Jones* Court reasoned *a fortiori* from the Court's prior decision *Commonwealth v. Moore*, 462 Pa. 231, 340 A.2d 447 (1975):

> In [*Moore* ] this Court held that it was harmless error to refuse a proper challenge for cause where the proposed juror was excluded by a peremptory challenge and the defense did not exhaust its peremptory challenges. It logically follows from [*Moore* ] that it is [not harmless] error to force a defendant to use his peremptory challenges on a person who should have been excused for cause and that defendant exhausts those peremptory challenges prior to the seating of the jury.

*Jones*, 383 A.2d at 876. Thus, our Supreme Court found per se reversible error under Pennsylvania law in circumstances materially identical to those in Ross, in which the United States Supreme Court granted no relief under the federal constitution. In so doing, the Supreme Court of

Pennsylvania availed itself of its prerogative to afford relief under state law—a prerogative underscored in Ross.

In a one-page discussion, the majority today finds that *Jones, Johnson,* and *McBee*—cases in which the respective appellants exercised peremptory strikes on jurors who should have been stricken for cause-dictate by negative implication that no such prejudice occurred in this case:

> In those cases, there was a forced selection of a juror and a forced use of a peremptory challenge and. such coercion was not held to be harmless error. Here, while Appellant was compelled to use peremptory strikes prematurely, there is absolutely no evidence and no argument that Appellant was forced to select a juror whom he would have stricken. Therefore, we do not find, and Appellant does not cite, any actual prejudice. Accordingly, we conclude that any error stemming from *voir dire* was harmless. . . .

Maj. Op. at 857. That those cases are inapposite to the case at bar is hardly conclusive as to whether prejudice accrued under the circumstances of the instant case. Indeed, that those cases, which comprise the bulk of Pennsylvania law in this area, are distinguishable merely underscores the fact that we should not uncritically invert or upend their reasoning. In doing so, the majority erodes the degree to which Pennsylvania courts protect a mechanism viewed for well over seven centuries as critical to the administration of justice.

I do not disagree that we have no choice but to reason from the cases presently on the books, despite the fact that they are distinguishable. And I do not disagree with the majority that *per se* prejudice does not result simply from misapplication of the prescribed procedures for jury se-

lection. Thus, I agree that we must apply harmless error analysis to each case.[1]

That being said, the common law long has recognized that "a right without a remedy is not a right at all but a mere abstraction." *Willcox v. Penn Mut. Life Ins. Co.*, 357 Pa. 581, 55 A.2d 521, 531 (1947). Thus, to demand a showing of prejudice when the issue is how a criminal defendant **would have used** one or more of his peremptory challenges had not the trial court patently violated the rules governing jury selection is to render a right provided to criminal defendants by Pennsylvania law a "mere abstraction," and, consequently, a nullity. Surely, in prescribing a detailed procedure for jury selection, our Supreme Court did not intend to deny all practicable recourse for ensuring the rule's faithful application by the trial courts.

Yet, as a practical matter, this absence of remedy is precisely the result that the majority's analysis ensures. One would be hard-pressed to hypothesize a plausible circumstance under which the trial court error here at issue could ever result in demonstrable prejudice, absent the empanelment of a juror who should have been stricken for cause. Admittedly, this is the only prejudice the United States Supreme Court has identified as rising to federal constitutional dimension, *see Rivera*, 556 U.S. at 157, 129 S.Ct. 1446. However, this is not responsive to the question of what remedies are appropriate to ensure protection of the time-honored right to the unfettered exercise of peremptory challenges as prescribed by the law of Pennsylvania. *See id.* at 157, 129 S.Ct. 1446 (erroneous impairment of state-created right to unfet-

tered peremptory challenge "is a matter for the state to address under its own laws"); *id.* at 161–62, 129 S.Ct. 1446 ("states are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se* ").

I believe that the very cases upon which the majority relies compel a finding of remediable harm in this case. The majority suggests that no remedy will lie absent a demonstration of actual prejudice, a demonstration that can never be made under the circumstances at bar. The majority rejects the application of *Jones* and *McBee* to this case because, in those cases, "actual prejudice" resulted from the defendant being forced to exercise a peremptory challenge on a juror who should have been stricken for cause. However, in neither case did the defendant demonstrate, nor was he required to demonstrate, that the premature exhaustion of his peremptory challenges resulted in the empanelment of a partial jury. Thus, the defendant in neither case identified "actual prejudice" in the final composition of the jury, only that a compromised jury would have been empaneled had defendants opted **not** to use a peremptory challenge to strike the improperly qualified juror. It cannot be disputed that Pennsylvania law, according to the majority's own account, protects the free exercise of all peremptory challenges provided by state law to a greater extent than federal law. *Compare Rivera; Ross, supra* (denying constitutional relief under materially identical circumstances), *with Ross*, 487 U.S. at 89, 108 S.Ct. 2273 ("[T]he right to peremptory challenges is denied or impaired ... if the defendant does not receive that which state law provides.").

---

**1.** As noted by the majority, "[H]armless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." Maj. Op. at 857 n. 4 (quoting *Commonwealth v. Allshouse*, —— Pa. ——, 36 A.3d 163, 182 (2012)).

*Moore* also must inform any reliance on *Jones* and *McBee*. Moore presented very similar circumstances, but resulted in a divergent outcome. In *Moore,* as in *Jones* and *McBee,* the appellant was compelled to use a peremptory challenge on a juror who should have been excluded for cause. Unlike in *Jones* and *McBee,* however, the appellant did not thereafter exhaust his peremptory challenges. Consequently, our Supreme Court deemed the error "harmless." 340 A.2d at 451.

The only way to harmonize *Jones, McBee,* and *Moore* is to examine the one material distinction between those cases: Whether the appellant exhausted his peremptory challenges after using one of them to rectify an erroneous refusal to disqualify a juror for cause. Thus, the harm found in the former two cases was the mere *inference* that the defendant used one less peremptory challenge than he would otherwise have used. For it is equally consistent with the facts of *Jones* and *McBee* to posit that, as in Moore, the defendants used precisely as many peremptory strikes as they chose to use. The defendants in *Jones* and *McBee* might just as easily have used their full complement of peremptory challenges, including the use of one to strike a juror who should have been stricken for cause, when they would otherwise have opted to use one less challenge than he was afforded by law. In those cases, this Court **could not know,** and therefore could not have considered dispositive, whether the defendant in fact had been denied one peremptory strike he certainly would have exercised had he not used it on the for-cause juror. Consequently, there is no other tenable way to reconcile these cases but to conclude that the harm for which they granted relief was the mere **possibility** that the defendant had been cheated of one peremptory challenge.

Notably, this interpretation squares fully with our definition of harmless error. As duly noted by the majority, "[H]armless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." Maj. Op. at 857 n. 4 (quoting *Commonwealth v. Allshouse,* —— Pa. ——, 36 A.3d 163, 182 (2012)). Nothing harmonizes *Moore, Jones,* and *McBee* better than the process of gauging whether, in each of those cases, one fairly could conclude that the error was harmless beyond a reasonable doubt. In *Moore,* despite being forced to sacrifice one peremptory challenge to correct trial court error, the appellant did not exhaust the balance of his challenges. Accordingly, we were free to conclude beyond a reasonable doubt that the trial court's error deprived the appellant of nothing. In *Jones* and *McBee,* however, the appellants' exhaustion of their available challenges, including ones they used to correct trial court error, manifestly created reasonable doubt that trial court error had cost them the free use of one of the peremptory challenges to which they were entitled by law.

In the case before us, Appellant was compelled to accept or peremptorily challenge jurors at the end of the first day of jury selection, aware that more jurors, wholly unknown to him, would be summoned to fill out the jury the following day, jurors as to whom he had none of the information he would have had pursuant to Rules 631–35 had the trial court strictly observed the requirements of Rule 631(E)(2). Notwithstanding this critical lack of information, Appellant was permitted just one chance to determine whether to strike any of the twenty-three jurors deemed eligible as of the evening of February 8. Thus, Appellant was cast upon the horns of this dilemma: Exercise some or

all of his peremptory challenges on the devils he knew—*i.e.*, those twenty-three jurors currently remaining from the first day's venire—or retain one or more challenges as hedges against the prospect that even more undesirable jurors might be empaneled the following day.

The trial court's erroneous application of Pa.R.Crim.P. 631(E)(2) forced Appellant to assess an incomplete jury pool for purposes of applying his peremptory challenges without full information about the jury pool as it finally would be composed. Appellant opted to exhaust his peremptory challenges against the twenty-three prospective jurors remaining at that time, his only opportunity to peremptorily challenge any of those individuals under the court's confabulated procedure. His challenges, combined with those of the Commonwealth, reduced the first day's jury pool to ten of the fourteen necessary to conduct trial. Thus, Appellant left to fate, and to the limited remedy of for-cause challenges, the selection of the final four jurors on day two.

It was plain error for the trial court to put Appellant in that position. This error was met with Appellant's premature exhaustion of his challenges, which was justifiable, if not inevitable, under the circumstances he faced. The practical result was the same as in *Johnson, Jones,* and *McBee:* The trial court placed Appellant in an intractable position under which it is impossible to find beyond a reasonable doubt that he was not denied the opportunity to use the prescribed number of peremptory challenges in the way intended by the rule. This was in derogation of the principles underlying peremptory challenges as reflected in the rules that Pennsylvania has adopted to govern their

exercise, and the error was not harmless beyond a reasonable doubt.

For the foregoing reasons, I would hold that a trial court's erroneous infringement upon Appellant's right to exercise a certain number of peremptory challenges by misapplying the rules of criminal procedure, when combined with the subsequent exhaustion of the infringed-upon party's peremptory challenges, rendered the underlying error harmful for precisely the same reasons harm was found in *Jones* and *McBee.* Thus, I would reverse Appellant's judgment of sentence and remand for a new trial. Accordingly, I respectfully dissent.[2]

---

**2.** In light of my views on this issue, my approval or disapproval of Appellant's challenge to certain comments made by the prosecution during closing argument is immaterial.