J-A02029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL GREER | : | |
| | : | |
| Appellant | : | No. 1195 WDA 2018 |

Appeal from the Judgment of Sentence Entered May 14, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007945-2017

BEFORE: SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED FEBRUARY 14, 2020**

Appellant, Daniel Greer, appeals from the judgment of sentence entered on May 14, 2018, as made final by the denial of post-sentence motions on July 30, 2018, following his jury trial convictions for three counts of criminal mischief, two counts of criminal attempt (homicide), two counts of aggravated assault, two counts of recklessly endangering another person, and firearms not to be carried without a license.[1] We affirm.

We briefly summarize the facts and procedural history of this case as follows. On Easter Sunday in 2013, there was a daytime drive-by shooting with an automatic firearm in a residential area of West Mifflin, Pennsylvania. While slowly driving down a neighborhood street, the shooter fired approximately 20 times at a male and female who were standing side-by-side

_____

[1] 18 Pa.C.S.A. §§ 3304, 901/2501, 2702, 2705, and 6106, respectively.

on the sidewalk. The female was injured and the male fled the scene. When police arrived on the scene, the female victim and her mother immediately identified Appellant, who went to high school with the victim, as the shooter. The victim claimed that she was six feet away from Appellant at the time of the shooting. The victim's mother, who ran outside to aid her daughter when she heard gunshots, saw Appellant from a similar vantage point.[2] Additionally, during the incident, Appellant sideswiped parked vehicles and damaged the vehicle he was driving, but he managed to escape. Several days later, police found an abandoned, damaged car matching the description given by eyewitnesses about five miles from the scene of the crime. Police arrested Appellant over three years later in Myrtle Beach, South Carolina, living and working under an *alias*. Appellant did not have a license to carry a firearm. In February 2018, a jury found Appellant guilty of the aforementioned charges. On May 11, 2018, the trial court sentenced Appellant to an

_____

[2] Both women also identified Appellant as the perpetrator at trial. The victim's cousin, who was also at the scene but did not know Appellant previously, identified Appellant as the shooter at trial.

aggregate term of six to 12 years of imprisonment.[3]   This timely appeal resulted.[4]

On appeal, Appellant presents the following issue for our review:

I.      Did the [trial] court err in overruling defense counsel's objection and request for a limiting instruction regarding the prosecutor's inflammatory and prejudicial reference to "gangs" and his opinion that "40 ounces" meant "a gun," where no evidence was presented that [Appellant] was a member of a gang, no evidence was presented as to the meaning of "40 ounces," nor was any testimony presented indicating that the shooting was gang-related?

Appellant's Brief at 4.

Appellant specifically challenges the following closing remarks by the prosecutor:

[…] We know from [the victim's mother] that [Appellant] was part of some group called the 40 ounces [()which meant a can of beer in my day but today means a gun[)] with Linc Ensley, Dan Greer and three others.  And I don't mean to make light of the problems of [the] subculture of violent young men in depressed

_____

[3]   The trial court sentenced Appellant to concurrent terms of five to 10 years of incarceration for the two counts of criminal attempt (homicide).  The trial court further imposed a consecutive term of one to two years of imprisonment for firearms not to be carried without a license.  The remaining convictions merged for sentencing purposes.

[4]   Appellant filed a post-sentence motion on May 21, 2018.  The trial court filed an order denying relief on July 30, 2018.  On August 15, 2018, Appellant filed a notice of appeal.  On December 4, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant filed a Rule 1925(b) statement on January 2, 2019, which the trial court accepted as timely.  The trial court subsequently issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 27, 2019.

communities, but there are also good people living in fear in those communities and they really do.

Fifteen years ago when I came back to do violent crimes and firearms which includes homicides, attempted homicides, robberies, I had back in the early '90s done some investigation with gangs at the time. When I came back, I was the head of the Auto Theft Division. I was asked to come back and try these cases and one of the amazing facts was standing in a courtroom watching a mother who said she has to let her two kids go through the metal detector because she was afraid of bullets coming through – wow. This is serious stuff.

N.T., 2/20-22/2018, at 235.

Appellant argues that these comments "[led] the jury to infer that because [Appellant] was a member of a gang he[:] 1) was a violent person, 2) was closely connected to the other individuals observed at the time, and 3) had a motive to shoot the victim." Appellant's Brief at 11-12. As such, Appellant contends that the remarks effectively stripped him of the presumption of innocence. *Id.* at 12. Appellant further challenges the trial court's determination that a limiting instruction would have placed undue emphasis on the remarks. *Id.* at 14. More specifically, he claims, "the closing argument here not only emphasized a motive which had no factual basis in the record, but the nature of the alleged motive also indicated [Appellant] was involved in other criminal activity." *Id.* at 15. Appellant concludes that "[u]nder such circumstances, an instruction to the jury that no evidence was presented that [Appellant] was a gang member, was crucial and would not have been more harmful than the jury believing [Appellant] was a member of a violent gang and that was the motive for the shooting." *Id.*

Initially, we note that the trial court found this issue waived because Appellant did not contemporaneously object and, instead, waited until the Commonwealth finished its closing argument to raise an objection. Trial Court Opinion, 8/27/2019, at 3-4. "Our Supreme Court has held that such a delay does not result in waiver so long as: (1) there is no factual dispute over the content of the prosecutor's argument *(e.g.*, the argument was recorded and available for review at trial); and (2) counsel objects immediately after closing argument with sufficient specificity to give the court the opportunity to correct the prejudicial effect of the improper argument." **Commonwealth v. Rose**, 960 A.2d 149, 154 (Pa. Super. 2008), *citing* **Commonwealth v. Adkins**, 364 A.2d 287, 291 (Pa. 1976). Here, closing arguments were transcribed and available for review and, although defense counsel waited until the Commonwealth finished its closing arguments, he immediately asked for an instruction because "there [was] no evidence of any gang activity in this case[.]" N.T., 2/20-22/2018, at 239. Based on the foregoing, we believe that Appellant properly raised a timely objection immediately after the Commonwealth's closing argument, requested a specific jury instruction, and gave the trial court the opportunity to correct the alleged comments.[5] As

---

[5] We note that once a specific objection to prosecutorial misconduct during closing arguments is made, either a request for a curative instruction or request for a mistrial properly preserves the issue for appellate review. **See Commonwealth v Roberts**, 2019 WL 7372754 (Pa. 2019) (unpublished memorandum) at *2 ("While the Commonwealth is correct that Roberts' counsel did not request a mistrial, he did … request a curative instruction on the first three claims. Therefore, we decline to find waiver on Roberts' first three claims of prosecutorial misconduct.").

such, we conclude that the trial court erred by finding waiver. Accordingly, we proceed to the merits of Appellant's claim.

"It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009) (citation omitted). This Court has held

> prosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict.... In reviewing a claim of improper prosecutorial comments, our standard of review is whether the trial court abused its discretion. When considering such a claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one, because not every inappropriate remark ... constitutes reversible error.

*Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012) (citations omitted); *see also Commonwealth v. Spotz*, 47 A.3d 63, 98 (Pa. 2012) (citation omitted) ("Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial."). "Prosecutorial misconduct is evaluated under a harmless error standard." *Judy*, 978 A.2d at 1020 (citation omitted).

Our Supreme Court held:

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and

uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. The burden of establishing that the error was harmless rests upon the Commonwealth.

**Commonwealth v. Yockey**, 158 A.3d 1246, 1254 (Pa. Super. 2017), *citing*

**Commonwealth v. Chmiel**, 889 A.2d 501, 528 (Pa. 2005).

Here, upon review, the references to "40 ounces" and gang related activity were fleeting and insignificant in light of the properly admitted and overwhelming evidence at trial. Three eyewitnesses positively identified Appellant as the perpetrator of the charged crimes. Two of those witnesses knew Appellant before the shooting because he attended high school with the victim. The testimony of all three witnesses was unwavering and unequivocal. While the defense suggested that another person, Linc Ensely, was the culprit, the three eyewitnesses also knew Ensely and testified emphatically that it was not him.[6] Moreover, the jury heard evidence that after the shooting Appellant

---

6  For example, the victim's mother testified as follows:

[…] I just knew somebody was out there and shooting. I came out the door and ran up the steps. [Appellant] was there. I saw him. He saw me see him. He saw me there. You should ask him if he can identify me.

I have known Linc [Ensely] his entire life. If Linc was out there shooting, trust me, I would have come here and tell you it was

fled the jurisdiction and was living under an *alias* in South Carolina. Based upon the overwhelming evidence of record before us, we conclude that the error complained of was harmless as it could not have contributed to the verdict.

Finally, we acknowledge that prior to trial, the trial court instructed the jury that it was the jurors' recollection of evidence that controlled deliberations and they were not bound by any opinion of the court or the attorneys on either side. N.T., 2/20-22/2018, at 16-17. Moreover, the trial court explained to the jurors that "[t]he arguments of the lawyers are not binding on you. If considered carefully, it is proper for you to be guided by them if the arguments are supported by the facts and if they appeal to your reason and judgment." *Id.* at 17.

Furthermore, prior to deliberations, the trial court stated:

> The law requires that I repeat [] that the arguments of lawyers are not evidence and are not to be considered as such. However, in deciding this case, you should carefully consider the evidence

---

him. Whoever had anything to do with my daughter being shot, I want them to go to jail.

* * *

I saw [Appellant], he knows I saw him. He knows that my daughter saw him because when she's laying on the ground, I said "who shot you" and she said "Daniel Greer."

* * *

So why would I say it may be Linc or someone else? Why would I say that?

N.T., 2/20-22/2018, at 157-158.

in light of the various reasons and arguments which each lawyer presented for your consideration. It is the right and duty and responsibility of each lawyer to discuss the evidence in a manner which is most favorable to the side which he represents. You might be guided by the lawyers['] arguments but only to the extent that [they] may be supported by the evidence and insofar as they may aid you in applying your own reason and common sense. However, you are not required to accept the arguments of either lawyer. It is for you and you alone to decide the case based on the evidence as it was presented, and in accordance with these instructions.

*Id.* at 246. The trial court also told the jury that whether "there's enough evidence, direct or circumstantial, that's for you and you alone to make the determination on." *Id.* at 250. Finally, it also reiterated to the jury: "You are the sole judges of the facts. It's your responsibility to consider the evidence, to find the facts and apply the law to the facts as you find them and thereby decide whether or not the Commonwealth has met its burden of proving the defendant guilty beyond a reasonable doubt." *Id.* at 268.

Based upon our review of the foregoing jury instructions, we conclude that although the trial court did not grant Appellant's request for a specific jury instruction, the trial court specifically instructed the jury that arguments of counsel were not evidence and that the jurors' recollection of the facts controlled their deliberations. The jury is presumed to have followed such instructions. *Judy*, 978 A.2d at 1028 (citation omitted). Accordingly, for all of the foregoing reasons, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/2020