J-S05001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRISTEN M. SPAULDING | : | |
| | : | |
| Appellant | : | No. 1286 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 16, 2019
In the Court of Common Pleas of Tioga County Criminal Division at
No(s): CP-59-CR-0000106-2018

BEFORE: SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED APRIL 07, 2020**

Appellant, Kristen M. Spaulding, appeals from the July 16, 2019 judgment of sentence following her conviction by a jury of one count each of aggravated assault of a child less than six years old and endangering the welfare of a child.[1] We affirm.

The facts of the case are as follows: Dr. Elizabeth Murray, a pediatrician at Golisano Children's Hospital in Rochester, New York, testified as an expert in Pediatric Emergency Medicine. N.T., 4/22/19, at 87. Dr. Murray was the on-call physician at the hospital for the REACH Program[2] in December of 2017, when she consulted and examined N.S., Appellant's two-year-old daughter

---

[1] 18 Pa.C.S. §§ 2702(a)(8) and 4304(a)(1), respectively.

[2] Referral for Evaluation of Abused Children.

("Victim"). Dr. Murray testified that Victim initially was injured on December 27, 2017, was taken to Corning Hospital on December 28, 2017, and was transferred to Golisano Children's Hospital due to the severity of her injuries. Dr. Murray testified:

> The initial team that evaluated her was very concerned that, in fact, [Victim] had suffered significant burns; second-degree or potentially third-degree burns, so they asked the burn surgeons to evaluate her immediately, and she was transferred to the pediatric I.C.U., the Intensive Care Unit, because of the level of care that she needed.
>
> * * *
>
> She had burns to almost forty percent of her body. Again, they were mainly second, but then some third-degree burns, so very severe burns causing the blistering and the sloughing of the skin. Some were—some were so severe that she went on to require having skin graphing [sic] done.

N.T., 4/22/19, at 92–93.

Dr. Murray testified that Appellant denied that Victim sustained any injury, stating only that she gave Victim and Victim's two siblings a bath the night before, and that Victim had fallen and hit her head the week prior. N.T., 4/22/19, at 90, 103–104. Dr. Murray stated that myriad specialists—from pediatric infectious disease, dermatology, plastic surgery, and the burn team—all consulted on this case and "all of us, together, independently, came to the same conclusion that these wounds appear[ed] to be from a thermal

- 2 -

burn.[3] *Id.* at 101–102, 105. Dr. Murray testified that within a reasonable degree of medical certainty, "the injuries [were] thermal burns." *Id.* at 106.

Appellant was charged with aggravated assault of a child less than six years old, simple assault, endangering the welfare of a child, and recklessly endangering another person. A jury trial occurred on April 22–23, 2019. During trial, the trial court entered an order on April 23, 2019, dismissing the charges of simple assault and recklessly endangering another person. Order, 4/23/19. The jury found Appellant guilty, as described *supra*. The trial court sentenced Appellant on July 16, 2019, to fourteen to sixty months of imprisonment for aggravated assault and a concurrent term of imprisonment of fourteen to sixty months for endangering the welfare of a child. N.T., 7/16/19, at 5. Appellant filed a notice of appeal on August 5, 2019. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN MS. SPAULDING'S CONVICTION OF AGGRAVATED ASSAULT AND ENDANGERING THE WELFARE OF CHILDREN BECAUSE THE REQUISITE MENS REA WAS NOT PROVEN BEYOND A REASONABLE DOUBT?

II. WHETHER A NEW TRIAL SHOULD BE GRANTED BECAUSE MS. SPAULDING WAS DENIED HER RIGHT TO A FAIR TRIAL AFTER THE PROSECUTOR'S HIGHLY INFLAMMATORY AND PREJUDICIAL CLOSING ARGUMENT WHERE, AMONG OTHER THINGS, INVOKED

---

[3] Dr. Murray defined thermal burn as "[h]eat, excessive heat. Usually . . . excessive heat in the form of a liquid or a contact with a very hot object. What a layperson would just call a burn." N.T., 4/22/19, at 102.

SYMPATHY FOR THE MINOR VICTIM AND COMMENTED ON MS. SPAULDING'S RIGHT TO REMAIN SILENT OR TESTIFY?

III.   WHETHER A NEW TRIAL SHOULD BE GRANTED WHERE, EVEN AFTER TRIAL COUNSEL'S INSISTENCE, THE TRIAL COURT FAILED TO RULE ON MS. SPAULDING'S TIMELY REQUEST FOR A MISTRIAL AFTER THE PROSECUTOR'S PREJUDICIAL CLOSING ARGUMENT?

IV.   WHETHER A NEW TRIAL SHOULD BE GRANTED WHERE THE TRIAL COURT PERMITTED THE FOSTER PARENT TO TESTIFY REGARDING THE VICTIM'S INJURIES, TRAUMA AND MEDICAL TREATMENT, WHERE SUCH TESTIMONY WAS CUMULATIVE, PREJUDICIAL AND WENT BEYOND ORDINARY LAY WITNESS TESTIMONY?

Appellant's Brief at 4 (*verbatim*).

Appellant's first issue assails the sufficiency of the evidence. Our standard of review when considering a challenge to the sufficiency of the evidence is well settled:

A claim challenging the sufficiency of the evidence presents a question of law. We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict."

Our Supreme Court has instructed: The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding [an appellant]'s guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of

witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

In addition, "the Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the [Appellant]."

*Commonwealth v. Green*, 203 A.3d 250, 253 (Pa. Super. 2019) (*en banc*), *appeal denied*, 216 A.3d 1036, 54 WAL 2019 (Pa. filed July 30, 2019). Specific intent—the only element at issue here—"may be proven by direct or circumstantial evidence." *Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003).

Appellant asserts that the Commonwealth's theory that Appellant "drew the bath for her daughter, placed her into the water, where she suffered substantial burns and pain as a result[,] and failed to seek prompt medical care" is not sustained by the record. Appellant's Brief at 10. In essence, Appellant's argument is that there was no evidence that she "**purposely** placed her child in scalding bathwater," as evidenced by the fact that she gave her other children, ages one and five, a bath without incident. *Id.*; N.T., 4/22/19, at 22 (emphasis added). Indeed, Appellant avers that there was no evidence that she "knew or appreciated the temperature of the bath water." Appellant's Brief at 12.

The record establishes that Appellant gave Victim a bath the evening of December 27, 2017, and thereafter, "noticed the child's skin was sloughing off." N.T., 4/22/19, at 90. Pennsylvania State Trooper Terry Seal, who

investigated this case, stated that Appellant gave Victim a bath between 4:00 and 7:00 p.m. on December 27, 2017. There was no other adult present in the home. *Id.* at 22. Lauren Seip, the grandmother of Appellant's one-year-old son, gave Trooper Seal her telephone to share text messages and photographs she had received from Appellant the evening of December 27, 2017.[4] The photographs, which were admitted at trial, show Victim dressed in a diaper with the skin peeling off of her body. *Id.* at 32. The message from Appellant to Ms. Seip stated: "There's something all over [Victim's] body, they're like jelly bubbles and her skin is peeling." *Id.* at 34. The message and the photograph were sent at 7:42 p.m. on December 27, 2017. *Id.* A second message from Appellant was a "frontal photograph of [V]ictim standing with a diaper on while in obvious discomfort with red peeling skin visible on her stomach and legs; the corresponding text message reads 'When Jeff burnt my body on woodstove all the hospital did was ice nothing more.'" *Id.* at 35; Affidavit of Probable Cause, 2/21/18, at 1. Thus, with an awareness that her child was in pain and had skin peeling off of her body, Appellant neglected to seek medical care.

Dr. Murray, as well, testified that Ms. Seip showed her the pictures of Victim with "layers of skin peeling off of her, her arms and legs, and torso."

---

[4] The affidavit of probable cause states that Ms. Seip "signed a Waiver of Rights and Consent to Search Form" before showing Trooper Seal the messages and photographs on her cellular telephone. Complaint, Affidavit of Probable Cause, 2/21/18, at 1.

N.T., 4/22/19, at 92. Dr. Murray explained that Victim was transferred to the pediatric I.C.U., and the child was sedated "upwards of twenty sedation procedures" because of the pain associated with cleaning the wounds. *Id.* at 93, 102. Dr. Murray stated that the areas of damage to Victim's skin were "well demarcated, meaning there was a clear stop and start, versus a, kind of, more subtle transition." *Id.* at 94. Dr. Murray described the injury pattern and how it revealed the nature of the burn:

> So it looks like—if you put it all together, it looks like she was in a . . . seated position—you know, with the sparing behind the knees, you can see her knees would have been bent and that would, kind of, protect that skin, if you will. The same would be true with the creases in her groin, with the legs being bent, that would protect the skin. And then the areas of her shoulders, and actually from her elbows above did not have any burns, so that area was not in contact with the hot liquid.

*Id.* at 104–105. Dr. Murray testified that the burns caused Victim "extreme pain." *Id.* at 109. Additionally, "in the moments after such a scolding [sic] burn" Victim "would definitely be exhibiting the signs of experiencing extreme pain." *Id.*

The two cases cited by Appellant in support of her position, *Commonwealth v. Hoffman*, 198 A.3d 1112 (Pa. Super. 2018), and *Commonwealth v. Dohner*, 441 A.2d 1263 (Pa. Super. 1982), are not relevant. Appellant's Brief at 12. They concern whether malice was proven to support the crime of third-degree murder on one hand, and whether serious bodily injury occurred on the other. Appellant's Brief at 12. The trial court herein concluded, albeit without discussion, that it was "satisfied the evidence

was more than sufficient to establish [Appellant's] guilt beyond a reasonable doubt." Trial Court 1925 Statement, 9/17/19, at 1. We agree.

As we stated in *Hall*, "Where one does not verbalize the reasons for his actions, we are forced to look to the act itself to glean the intentions of the actor. Where the intention . . . is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct." *Hall*, 830 A.2d at 542. The Commonwealth had to prove that Appellant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to a child less than six years of age, by a person 18 years of age or older," 18 Pa.C.S. § 2702(a)(8), and "knowingly endanger[ed] the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). The record contains sufficient evidence that Appellant, age thirty-eight, intentionally, knowingly or recklessly placed Victim, age two, in scalding water, causing second and third degree burns, and knowingly failed to seek timely medical care. N.T., 4/22/19, at 21–22. This issue lacks merit.

Appellant's second and third issues relate to allegations of prosecutorial misconduct during closing argument, and we address them together. Appellant asserts that the Commonwealth invoked sympathy for Victim and improperly commented on Appellant's right to remain silent by an inflammatory and prejudicial closing argument, thereby requiring a new trial. Appellant's Brief at 13. Appellant also maintains that the trial court failed to rule on her request for a mistrial. *Id.* at 20.

Appellant highlights the following comments by the Commonwealth in making her claim that the Commonwealth's closing argument was prejudicial:

"There's been no testimony to the contrary."  Trial Tr. 62, April 23, 2019.

"She's [sic] still has taken zero responsibility for what happened to her own children, when she—when they were under her care.  *Id.* at 68.

"The [Appellant] has had about four hundred and eighty-one days, to the best calculation, to tell us what really happened." *Id.* at 70.

"[Appellant] never had any emotion."  Complete denial." *Id.* at 71–72.

\* \* \*

"The victim was two-year-old, [sic] defenseless and voiceless and she can't be here to testify." *Id.* at 73.

"So, as I stated in my opening, we are here for her." *Id.* at 73.

"We are her voice.  We are fighting because she can't be here to defend herself; and she couldn't fight for herself that night." *Id.* at 74.

"Now, I'm asking you to be her voice, as well, and be the ultimate voice for this defenseless two-year-old." *Id.* at 74.

"[Y]ou will be that ultimate voice for [Victim] and come back with an appropriate verdict of guilty." *Id.* at 74.

Appellant's Brief at 16–17.  Appellant argues that the closing argument created sympathy for Victim and was "a direct commentary on [Appellant's] failure to testify."  Appellant's Brief at 18.  Appellant further contends that the

"trial court's perfunctory final instructions were inadequate to cure the prejudice." *Id.* at 19.

"Prosecutorial misconduct does not take place unless the 'unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward [Appellant], thus impeding their ability to weigh the evidence objectively and render a true verdict.'" *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008) (quoting *Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. 2002)). "In reviewing a claim of improper prosecutorial comment, our standard of review is whether the trial court abused its discretion." *Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012). When considering such a contention, "our attention is focused on whether [Appellant] was deprived of a fair trial, not a perfect one, because not every inappropriate remark by a prosecutor constitutes reversible error." *Id*. at 858 (citing *Commonwealth v. Lewis*, 39 A.3d 341, 352 (Pa. Super. 2012)). "A prosecutor's statements to a jury do not occur in a vacuum, and **we must view them in context**." *Noel*, 53 A.3d at 858 (emphasis added).

First, we observe that Appellant did not object to any of the above remarks when they were made.[5]   N.T., 4/23/19, at 58–74.   While

---

[5]  Thus, we could find waiver to the present challenges of the statements. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Henkel*, 938 A.2d

"interruptions of arguments . . . are matters to be approached cautiously," *United States v. Young*, 470 U.S. 1, 13 (1985), such action would have prompted the trial court to rule on individual comments or themes of comments. Instead, at the conclusion of the Commonwealth's closing argument, Appellant's counsel moved for a mistrial stating that he objected to "[r]epeated statements that somehow [Appellant] has to accept responsibility." N.T., 4/23/19, at 74.

Following Appellant's motion for mistrial, the trial court made clear it was going to provide a cautionary instruction to the jury and specifically asked Appellant for input regarding the instruction. N.T., 4/23/19, at 76. During the jury charge, after the court instructed on Appellant's presumption of innocence, the fact that Appellant had no burden of proof nor requirement to present any evidence, the trial court entertained a sidebar discussion and asked for additional objections. *Id.* at 77, 87. Defense counsel implied he had no further objections relating to the mistrial motion, *id.* at 87, and instead, lodged new, additional objections. *Id.* at 88–90. Importantly, relating to the mistrial motion, defense counsel stated he "assumed" it was denied and merely wanted the record clear that he had requested same. *Id.* at 88. The trial court resumed its charge to the jury, and at its conclusion, asked for objections; none were lodged. *Id.* at 95.

---

433 (Pa. Super. 2007) (failure to raise contemporaneous objection to evidence at trial waives claim on appeal).

The record reveals that while it would have been preferable if the trial court clearly announced its ruling regarding Appellant's oral motion, the record also reflects that Appellant understood that the motion for mistrial was denied. N.T., 4/23/19, at 88. Thus, we reject Appellant's third issue claiming the trial court erroneously failed to rule on the mistrial motion.

We also conclude that the basis asserted by Appellant did not rise to the level of improper comment, and any perceived impropriety was cured by the trial court's instruction. While the trial court expressed "some concern" regarding the Commonwealth's suggestion that Appellant failed to accept responsibility, it also opined that its instructions to the jury "clearly established that [it] could not use any failure of [Appellant] to testify or 'accept responsibility' against her in determining guilt or innocence." Trial Court 1925 Statement, 9/17/19, at 2. The trial court also explained:

> With regard to the issue of an appeal to sympathy, we specifically charged the jury that contrary to the Commonwealth's suggestion . . . it was not [its] role to "be the voice of the child" or to establish social policy or social justice. We believe this instruction to be sufficient to overcome any suggested prejudice in the Commonwealth's statements.

*Id.*

Read in the context in which the prosecutor's statements were made, we agree with the Commonwealth that rather than referencing Appellant's right to remain silent as Appellant suggests, the Commonwealth was merely pointing out that Appellant told several different stories to several different people, each of whom testified, about what occurred and her suggestion

regarding what caused Victim's injury. Commonwealth's Brief at 9. Based on the injuries to Victim and the expert testimony of the treating physician, Appellant failed to take the necessary steps to provide for and protect her child.

We have said that the remedy of a mistrial is an extreme remedy required "only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." ***Commonwealth v. Judy***, 978 A.2d 1015, 1019 (Pa. Super. 2009). Viewing the above comments, not in isolation, but in the context in which they were made, as we must, ***Commonwealth v. Sampson***, 900 A.2d 887, 890 (Pa. Super. 2006), we are not persuaded that the trial court abused its discretion, and any improper effect was cured by the trial court's instruction. ***See Commonwealth v. Harris***, 884 A.2d 920, 927 (Pa. Super. 2005) ("[W]hen a trial court finds that a prosecutor's comments were inappropriate, they may be appropriately cured by a cautionary instruction to the jury."). Therefore, Appellant has not demonstrated entitlement to a new trial based on the Commonwealth's comments. ***Commonwealth v. Ragland***, 991 A.2d 336, 340 (Pa. Super. 2010).

In her final issue, Appellant asserts that a new trial should be granted because the trial court erroneously permitted Alyssa Lapp, Victim's foster parent, to testify regarding Victim's "injuries, trauma, and medical treatment." Appellant's Brief at 23. We disagree.

This allegation of error challenges the admission of evidence at trial. We recently reiterated:

> "Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." **Commonwealth v. Russell**, 938 A.2d 1082, 1091 (Pa. Super. 2007) (citation omitted). An abuse of discretion is more than a mere error of judgment; rather, an abuse of discretion will be found when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." **Commonwealth v. Busanet**, 572 Pa. 535, 817 A.2d 1060, 1076 (2002) (citation and quotation omitted).

**Commonwealth v. Saez**, ___ A.3d ___, ___, 2019 PA Super 362, *5 (Pa. Super. filed December 20, 2019) (quoting **Commonwealth v. Pukowsky**, 147 A.3d 1229, 1233 (Pa. Super. 2016)).

> In response to this issue, the trial court stated as follows:
>
> Contrary to [Appellant's] suggestion the testimony was not cumulative of the testimony of the treating physician. Much of the testimony involved observations made by the witness. As we noted at trial (Transcript Page 12), we were satisfied the jury could "use its commonsense to determine the weight it wants to give to the testimony of this witness." We disagree with [Appellant's] suggestion that it would require an "expert" to make observations that the witness herself made of the child's condition while in her care.

Trial Court 1925 Statement, 9/17/19, at 1.

The record supports the trial court's conclusion. First, the single case cited by Appellant, **Commonwealth v. Allison**, 703 A.2d 16 (Pa. 1997), has no bearing on the instant issue. Therein, a child's caretaker testified about the condition of her seven-year-old niece's hymen as viewed during a physical

examination, where the examining physician did not testify. This case is not relevant. Second, in the instant case, Ms. Lapp testified that Victim came into her care on January 27, 2018, N.T., 4/23/19, at 9, which was only one month following Victim's burn. Ms. Lapp, rather than testifying as an expert, merely described the care that Victim required and the toddler's continuing difficulty dealing with the wound care required for her injuries. *Id.* at 10–12. In addition, Ms. Lapp described the child's hesitancy and at times, intolerance, of taking a bath. *Id.* at 13. This testimony was neither cumulative nor testimony within the realm of an expert witness. Ms. Lapp merely explained the day-to-day care required by Victim due to her burns, and the witness described her personal observations. The trial court did not abuse its discretion in permitting Ms. Lapp's testimony. Accordingly, the issue lacks merit.

Judgment of sentence affirmed.

Judge Kunselman joins this Memorandum.

Judge Musmanno files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/07/2020

- 15 -