J-A27015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                PENNSYLVANIA
:
v.                          :
:
:
:
AUSTIN JACOB KNIGHT              :
:
Appellant          :    No. 481 MDA 2021

Appeal from the Judgment of Sentence Entered January 12, 2021
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0000062-2019

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:              **FILED: DECEMBER 19, 2022**

Appellant, Austin Jacob Knight, appeals from the January 12, 2021 Judgment of Sentence entered in the Lackawanna County Court of Common Pleas following his jury conviction of Aggravated Indecent Assault Without Consent, Sexual Assault, Indecent Assault Without Consent, Unlawful Contact with a Minor, and Corruption of Minors.[1]  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On January 25, 2018, R.K. ("Victim") reported to police that Appellant, who was 28 years old, had sexually assaulted her on October 31, 2017, when Victim was 16 years old.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3125(a)(1), 3124.1, 3126(a)(1), 6318(a)(1), and 6301(a)(1)(ii), respectively.

Following an investigation of Victim's allegations, on February 25, 2019, the Commonwealth charged Appellant with the above crimes arising from his conduct on October 31, 2017.

On January 9, 2020, the Commonwealth filed a Motion in *Limine* to Introduce Evidence of Other Crimes, Wrongs, or Acts. In an effort to establish Appellant's pattern of manipulative and coercive behavior towards minor females, the Commonwealth sought to introduce the testimony of Janet Bash. Ms. Bash had previously had a relationship with Appellant when she was 13 years old, and Appellant was 19 years old.[2] Their relationship began as a friendship, became sexual when Ms. Bash was 14 years old, and resulted in Ms. Bash becoming pregnant at age 16. The Commonwealth represented that Ms. Bash would offer testimony that, *inter alia*, Appellant often performed sex acts on her even when she said she did not want him to and that he used coercion and force. The Commonwealth argued that both the difference between Ms. Bash's and Appellant's ages and Appellant's use of pressure to coerce Ms. Bash into engaging in various sexual acts were relevant at trial.

In response, on September 30, 2020, Appellant filed a Motion in *Limine* to Exclude Evidence of Prior Crimes, Wrongs, or Acts pursuant to Pa.R.Crim.P. 404(b), asserting that Ms. Bash's testimony was irrelevant and unfairly prejudicial. In particular, Appellant asserted that Ms. Bash had no connection

---

[2] At the time of Appellant's trial, Ms. Bash was 22 or 23 years old. ***See*** N.T. Trial Motions Hr'g, 10/5/20, at 3.

to the victim in, or "presence in the fact pattern" of, this case.[3]   Appellant further averred that "[t]here is no logical connection to [Appellant's] crimes and the unsubstantiated statement of a prior acquaintance."[4]   Appellant concluded that the court should exclude Ms. Bash's testimony because it would unduly prejudice and confuse the jury because "the alleged prior bad acts have similar elements as [Appellant's] current charges."[5]

On October 5, 2020, immediately prior to the commencement of Appellant's trial, the trial court heard argument on the motions in *limine*, after which it granted the Commonwealth's motion, denied Appellant's motion, and permitted the Commonwealth to present Ms. Bash's testimony at trial.

At trial, the Commonwealth presented the testimony of, *inter alia*, Victim and Ms. Bash.[6]   Victim explained that she and Appellant had met in August of 2017 at Skateaway, a skating rink in Wilkes Barre, and had developed a

---

[3] Motion in *Limine*, 9/30/20, at ¶ 12.

[4] *Id.* at ¶ 13.

[5] *Id.* at ¶ 16, 19-20.

[6] The Commonwealth also presented the testimony of Cheryl Friedman, the nurse practitioner at The Children's Advocacy Center in Scranton who performed Victim's sexual assault physical exam; Officer Jason O'Hora of the Moosic Borough Police Department; Sara Worsnick, a Pennsylvania State Police forensic analyst; and Melinda Charley, a Pennsylvania State Police DNA forensic scientist.  In addition to its testimonial evidence, the Commonwealth presented physical evidence corroborating Victim's claim that Appellant had raped her, namely Appellant's DNA in semen found on towel Victim indicated that she had used to clean herself after Appellant ejaculated on her.  Victim saved this evidence in her home and turned it over to police when she reported the rape.

friendship.  Appellant was aware from the outset that Victim was only 16 years old, and Appellant led Victim to believe that he was in his early twenties.  As time passed, Appellant garnered Victim's and Victim's mother's trust, and Victim, with her mother's approval, began to rely on him for transportation to the skating rink.  The relationship between Appellant and Victim soon alienated Victim from her friends, however, and she became estranged from them.

Eventually, the friendship between Victim and Appellant evolved into a sexual relationship.  Victim testified that this "confused her" because she "never really had any sexual knowledge in general" but that she ignored her instincts because she thought "this is what people do, I shouldn't be doing be saying anything.  You know, this is normal."[7]  Victim testified that Appellant kissed her and touched and digitally penetrated her vagina and touched her breasts.  She testified that, by the fall of 2017, she was uncomfortable with Appellant's actions, which included the performance of oral sex on her.  She further testified that she told Appellant she did not want him to perform oral sex on her, but that he would do it anyway.  She also testified that when she expressed feeling uncomfortable in sexual situations, Appellant would persuade her that he cared about her and just wanted to "make [her] feel

---

[7] N.T. Trial, 10/5/20, at 39.

good."[8]  Victim testified that, ultimately, she realized that Appellant had been grooming her for sexual abuse by talking her into thinking a sexual relationship was what she wanted.

On the night of October 31, 2017, Victim went to a haunted house with Appellant.  While the two were standing in line, Appellant "would press himself up against" Victim with his "penis [] against [her] butt."[9]  After the haunted house, Appellant and Victim returned to Victim's home where, on Victim's front porch, Appellant penetrated Victim's vagina digitally and performed oral sex on her even though she expressed to Appellant that she did not want him to.  Later, the two retreated to Victim's basement where Appellant's sexual advances escalated and culminated in Appellant performing oral sex and intercourse with Victim against her will.  Victim testified that she "said that I didn't want to.  I said that very firmly that night.  It was the only time that I could say [] without a doubt that I completely and honestly didn't want to do anything, and I made it very clear."[10]

Even after this incident, Victim continued to spend time with Appellant, although the two became more distant.  Victim explained that Appellant's distance made her nervous because Appellant had begun yelling at her and

_____

[8] *Id.* at 40.  *See also id.* at 42 (Where Victim testified that "I thought, you know, he wants to be kind and he wants to make me feel good.  He wants to take care of me.  I might as well, you know.").

[9] *Id.* at 40.

[10] *Id.* at 46.

being verbally abusive causing Victim to become afraid that Appellant would hurt her.  She testified, however, that she feared cutting off all contact with Appellant because she "knew the risk."[11]  Victim also testified that she was also scared of Appellant because, on one occasion after the rape, Appellant, while intoxicated, approached Victim and her mother at Skateaway and pulled out a knife.

Victim testified that she did not tell anyone about the rape until January 2018.  She explained that she came forward because she "was struggling after the main sexual assault experience.  I realized that I was being groomed, and I didn't realize how long it was happening, obviously.  Looking back on the situation it made me feel like he was the only one there for me all of the time, so I felt like I needed to hold onto that, even though I was going through so much pain from it."[12]

The Commonwealth then presented the testimony of Ms. Bash.  In addition to the facts proffered by the Commonwealth in its motion in *limine*, Ms. Bash testified that at the time she met Appellant she was depressed and did not have much of a social life.  Ms. Bash's father worked with Appellant and introduced Appellant to Ms. Bash when she was 13 years old.  When she was 14 or 15 years old, her friendship with then-21-year-old Appellant, became sexual.  Also, around that time, Appellant moved into Ms. Bash's

---

[11] *Id.* at 53.

[12] *Id.* at 59-60.

family's home. Relevantly, Ms. Bash testified that she requested that Appellant use condoms when they had intercourse, but Appellant refused, explaining that they hurt him. Ms. Bash testified that she naively believed Appellant. She also testified that she felt pressured to have intercourse with Appellant and to permit him to ejaculate inside her. She testified that "[s]ometimes he forced" her to "finish inside. Like he would hold me down and like pressure me into it or use words" such as "[i]t would make us closer."[13] She also testified that, although he never physically forced her to have intercourse, she felt pressured because he told her that if she did not agree, Appellant "would leave or find someone else to do it[.]"[14] Ms. Bash testified that sometimes she would try to physically resist Appellant by squirming away during intercourse but Appellant would pin her down.

Appellant testified on his own behalf.[15] Relevantly, Appellant denied that he had a sexual relationship with Victim and denied that he had sexually assaulted her. Appellant advanced the defense that Victim was a "troubled young girl"[16] with mental health problems[17] who came from a broken home. He asserted that Victim's mother, who worked nights, was not around much

_____

[13] *Id.* at 88.

[14] *Id.*

[15] Appellant also presented the testimony of Victim's mother and Appellant's friend, Steven Ashworth.

[16] N.T. Trial, 10/6/20 at 106.

[17] Victim suffered from post-traumatic stress disorder and depression.

and that her father was not "in the picture."[18] Appellant asserted that he was one of the only stable people in Victim's life and posited that Victim had felt abandoned by him when he took a new job, which resulted in him having less time for her. He concluded that this caused Victim to become angry with him and to fabricate the sexual assault allegation. Appellant's counsel reiterated these themes during his closing argument.

The Commonwealth used its closing argument to rebut Appellant's defense that Victim fabricated her account of their sexual relationship and Appellant's assault by emphasizing that Victim had little to gain from accusing Appellant of crimes he did not commit and from testifying publicly, which required her to reveal intimate and embarrassing details of being sexually assaulted. To this end, the prosecutor highlighted the potential embarrassment caused by reporting and detailing her assault to male police officers, undergoing an invasive sexual assault medical exam, and testifying publicly "in front of all of you, right, a room full of strangers in front of her dad who is by her side[.]"[19]

Following the Commonwealth's closing argument, Appellant moved for a mistrial based on the prosecutor's reference to what Appellant characterized as "a very important fact that was not offered into evidence[.]"[20] In particular,

---

[18] N.T. Trial, 10/5/20, at 22.

[19] N.T. Trial, 10/6/20, at 121.

[20] *Id.* at 144.

Appellant objected to the Commonwealth having identified Victim's father, who was seated in the courtroom. Appellant asserted that Victim's father's identity was not in evidence and was "inflammatory, prejudicial and . . . goes against [Appellant's] defense" that Victim did not have the support of her family.[21] The court denied Appellant's motion.

At the conclusion of trial, the jury convicted Appellant of all charges. On January 12, 2021, the trial court sentenced Appellant to an aggregate term of incarceration of 84 to 168 months, comprised of a 30 to 60 months for the Aggravated Indecent Assault conviction, 42 to 84 months for the Sexual Assault conviction, and 12 to 24 months for the Indecent Assault conviction. The court ordered the sentences to run consecutively.[22]

On January 22, 2021, Appellant filed a Petition for Reconsideration of Sentence, asserting that because the conduct for which the jury convicted Appellant occurred on one night, the court erred in not merging his convictions for purposes of sentencing. In the alternative, Appellant requested that the court impose concurrent sentences for those convictions.

On March 16, 2021, the trial court denied Appellant's petition for reconsideration of sentence, finding that "the charging documents and supporting documents of record describe the operative facts in such a way as

---

[21] *Id.*

[22] The court also ordered Appellant to serve a consecutive term of 2 years of probation for his Aggravated Indecent Assault conviction and two consecutive terms of 2 and 4 years of probation for his Unlawful Contact with a Minor and Corruption of Minors convictions, respectively.

to distinguish the specific conduct from one single act to multiple incidents."[23]

Therefore, the court concluded that the charges do not merge for sentencing purposes.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the trial court err in granting the Commonwealth's Motion *in Limine* to introduce evidence of Appellant's crimes, wrongs[,] or acts?

2. Did the trial court err in denying Appellant's Motion for a Mistrial after the district attorney referred to facts not in evidence during closing arguments?

3. Did the trial court err in not merging a lesser included crime with other princip[al] crimes at sentencing?

Appellant's Brief at 7.

**A.**

In his first issue, Appellant asserts that the trial court erred in denying his motion in *limine* to preclude the testimony of Ms. Bash. *Id.* at 17-23. Appellant argues that Ms. Bash's testimony was "not substantially related to the matter at hand, the fact pattern was not strikingly similar to the matter at trial, the prior acts were remote in time, [] the evidence offered had no probative value[,]" and the Commonwealth sought to introduce it "solely to show that [Appellant] acted in conformity with alleged past behavior." *Id.* at 20. In support of his argument, Appellant emphasizes that: (1) Ms. Bash and

---

[23] Order, 3/16/21, at 1 n.1.

Appellant were introduced by Ms. Bash's father and their relationship had his blessing; (2) there was only a six-year age gap between Ms. Bash and Appellant; (3) their sexual relationship was consensual; and (4) six years had passed between the time of Appellant's relationship with Ms. Bash and his relationship with Victim. *Id.* at 20-21.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (*en banc*) (citations and quotation marks omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotations omitted).

Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, the Rule also provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

To establish one of the exceptions set forth in Rule 404(b), there must be "a close factual nexus sufficient to demonstrate the connective relevance

- 11 -

of the prior bad acts to the crime in question." ***Commonwealth v. Sami***, 243 A.3d 991, 999 (Pa. Super. 2020) (citation and emphasis omitted). Additionally, the term "unfair prejudice" in Rule 404(b)(2) "means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007) (citation omitted).

In considering the common plan exception, "the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator." ***Tyson***, 119 A.3d at 358-59 (Pa. Super. 2015). Importantly, "[t]he common scheme exception does not require that the two scenarios be identical in every respect." ***Id.*** at 360 n.3 (emphasis omitted).

In determining the admissibility of Ms. Bash's testimony, the trial court scrupulously compared the details of Appellant's relationship with her to Appellant's relationship with Victim and "found these situations substantially similar such that they indicated a common plan[.]" Trial Ct. Op., 3/9/22, at 26. In particular, the trial court opened as follows:

> The similarities between Janet Bash and [Victim] indicate a common plan in which [] Appellant earned the trust of naïve, socially isolated minor females, initiated daily communication and

regular contact, manipulated them into inappropriate touching and kissing, evolving into sexual contact, and eliciting sexual contact through confusion, verbal coercion[,] and physical force. [] Appellant created opportunities for Janet Bash and [Victim] to spend periods of time [with him] encouraging sexual conduct to occur. []Appellant's daily interactions with Janet Bash and [Victim] conditioned the minor females to accept sexual conduct and be deterred from resisting or reporting the assaults.

*Id.* at 26-27.

In addition, the trial court weighed the probative value of this evidence against its prejudicial effect and determined that "any prejudicial effect the testimony may have had was insignificant compared to the overwhelming evidence of Appellant's guilt[,]" including Victim's detailed testimony and the forensic evidence. *Id.* at 27-28. Accordingly, the trial court concluded that "[g]iven the similarities, this [c]ourt did not find Appellant's prior bad acts to be unfairly prejudicial[;]" rather, they "established that [] Appellant's actions were not the result of mistake or accident and instead evidenced a pattern or common scheme by [] Appellant." *Id.* at 28.

Following our review, we conclude that the trial court did not abuse its discretion in permitting the Commonwealth to offer Ms. Bash's testimony to establish that Appellant's actions were part of a common scheme of coercion and manipulation of teenage girls. Accordingly, Appellant is not entitled to relief on this claim.

**B.**

In his second issue, Appellant asserts that the trial court erred in denying his motion for a mistrial after the prosecutor identified Victim's

father's and noted his presence in the courtroom during the closing argument. Appellant's Brief at 23-27. He claims that the prosecutor's identification of Victim's father was calculated to show that Victim had his support to "undermine [ ] Appellant's defense[] and inflame the passions of the jury." *Id.* at 27. He argues that identifying Victim's father was "more than rhetorical flair" and constituted a "reference to a fact not admitted into the record of evidence and deprived [] Appellant of a fair and impartial jury." *Id.*

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). "[N]ot every inappropriate remark by a prosecutor constitutes reversible error." *Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012). "It is [] well established that a trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Bryant*, 67 A.3d at 728 (quotation marks and citation omitted).

The Commonwealth is "permitted wide latitude to advocate [its] case, and may properly employ a degree of [oratorical] flair in so doing." *Commonwealth v. Keaton*, 729 A.2d 529, 540 (Pa. 1999). Moreover, "[i]n determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing." *Commonwealth*

*v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super. 2021) (citation omitted); *see also Commonwealth v. Carson*, 913 A.2d 220, 236 (Pa. 2006) (stating that a prosecutor is entitled to fairly respond to arguments made by defense counsel in closing argument).   In fact, "[e]ven an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks." *Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014) (citation omitted.

The trial court evaluated the prosecutor's reference to and identification of Victim's father, who was seated in the courtroom, in the context of Appellant's defense and his counsel's closing argument.  The trial court aptly noted that Appellant based his defense on the notion that Victim fabricated the allegations against Appellant because she had mental health issues, came from a broken family, and felt abandoned by Appellant.  In response to Appellant's defense, the prosecutor asserted that Victim had no reason to lie and emphasized, *inter alia*, the embarrassment and suffering endured by Victim by disclosing the sexual assault and the sensitivity of recounting intimate personal details to both her family and strangers alike.

Following its review of the statements made by Appellant, his counsel, and the prosecutor in context, the trial court found that the prosecutor's statement—referring to Victim's embarrassment at disclosing the sexual assault to people including father and noting, in passing, his presence in the courtroom—was reasonable and was "clearly not in response to a lack of family support."  Trial Ct. Op. at 30.  The trial court found that "the prosecutor did

not refer to [Victim's] father to counter defense's lack of family support argument nor did the 'dad' reference amount to 'facts not in evidence.'" *Id.* Accordingly, the court concluded that the prosecutor's remark did not "so prejudice the jury that it could not weigh the evidence objectively and render a true verdict. A mistrial was not warranted on this contention; thus, this [c]ourt did not commit error or abuse its discretion." *Id.*

Our review of the notes of testimony confirms the trial court's assessment that the prosecutor's reference to Victim's father was offered to illustrate the difficulty Victim endured in reporting and recounting the details of the sexual assault, not to undermine Appellant's assertion that Victim's father was not involved in her life. We, therefore, agree with the trial court that the statement did not prevent the jury from weighing the evidence objectively or rendering a true verdict. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial. Appellant's claim, thus, fails.

## C.

In his final issue, Appellant claims that the trial court erred in not merging his Indecent Assault conviction into his Sexual Assault and Aggravated Indecent Assault convictions as a lesser included offense for sentencing purposes. Appellant's Brief at 28-31. In particular, Appellant argues that "[a]t most, there were two crimes committed without the complainant's consent[,]" *i.e.*, the sex acts performed by Appellant on Victim's porch without Victim's consent and the later sexual assault in Victim's

basement where Appellant assaulted Victim both orally and with his penis and [t]he element of indecent contact required for Indecent Assault is an element of both Sexual assault and Aggravated Indecent Assault." *Id.* at 31. He concludes that, because there was "no third incident to support an independent crime of Indecent Assault" it is "a lesser included crime of Aggravated Indecent Assault and Sexual Assault and should have been merged for purposes of sentencing." *Id.*

Whether certain criminal offenses merge for sentencing is a question of law. *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009). Our "scope of review is plenary and our standard of review is *de novo*." *Commonwealth v. Williams*, 920 A.2d 887, 889-890 (Pa. Super. 2007) (citation omitted).

"The merger doctrine developed to prevent punishing a defendant more than once for one criminal act." *Commonwealth v. Gatling*, 807 A.2d 890, 894 (Pa. 2002). In *Baldwin*, our Supreme Court explained, "[t]he statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Baldwin*, 985 A.2d at 833. *See also* 42 Pa.C.S. § 9765 ("No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense."). If either prong is not met, merger is not appropriate. *Gatling*, 807 A.2d 899.

- 17 -

A lesser-included offense is defined as follows:

One crime is a lesser-included offense if, while considering the underlying factual circumstances, the elements constituting the lesser crime as charged are all included within the elements of the greater crime, and the greater offense includes at least one additional element that is not a requisite for committing the lesser crime.

*Id.* at 899 n.9.

Section 3126(a)(1) of the Crimes Code provides that "[a] person is guilty of [I]ndecent [A]ssault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and [] the person does so without the complainant's consent." 18 Pa.C.S. § 3126(a)(1). The Crimes Code defines "indecent contact" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire[.]" 18 Pa.C.S. § 3101.

Pursuant to Section 3125(a)(1) of the Crimes Code, a person is guilty of Aggravated Indecent Assault when he, without consent, "engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygenic, or law enforcement procedures[.]" 18 Pa.C.S. § 3125(a)(1).

A person is guilty of Sexual Assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1.

In comparing the statutes defining Indecent Assault and Aggravated Indecent Assault, we observe that each offense contains an element not present in the other. In particular, a conviction of Aggravated Indecent Assault requires proof that the defendant penetrate of the genitals or anus of the victim and Indecent Assault requires proof that the defendant committed the assault to arouse or gratify sexual desire. **See Commonwealth v. Allen**, 856 A.2d 1251, 1253-54 (Pa. Super. 2004) (where this Court determined that Indecent Assault and Aggravated Indecent Assault are not greater and lesser-included offenses; therefore, merger of convictions of those offenses for sentencing purposes was not appropriate).

Similarly, in comparing the statutory elements of Indecent Assault and Sexual Assault, we find that the Crimes Code does not require the Commonwealth to prove that the defendant committed the assault to arouse or gratify sexual desire in order to convict the defendant of Sexual Assault, but, as noted above, it must prove this element to convict the defendant of Indecent Assault. Moreover, a conviction of Sexual Assault requires proof of sexual intercourse or deviate sexual intercourse, whereas Indecent Assault requires only "indecent contact," which the Crimes Code defines as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire[.]" 18 Pa.C.S. § 3101. Thus, these crimes likewise do not merge for sentencing purposes. Appellant is, therefore, not entitled to relief on this claim.

**D.**

In conclusion, Appellant's challenge to the trial court's evidentiary ruling, its denial of his motion for a mistrial, and his claim that the trial court erred in not merging certain of his convictions for sentencing purposes all fail. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2022